IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JACKIE M. MOORE,

        Plaintiff,

                                    CASE NO.  3:06cv255-RV/MD

vs.

SEARS ROEBUCK & COMPANY,

        Defendant.

_____/

## ORDER

This employment discrimination case arises principally under the Family Medical Leave Act of 1993 [29 U.S.C. §§ 2601 *et seq*.] ("FMLA"). The parties have had full opportunity to conduct discovery. Now pending is the defendant's motion for summary judgment (doc. 22), brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff has filed a response in opposition, and the defendant has filed a reply to that response.

**I.    BACKGROUND**

    **A.    Facts**

Except where otherwise noted, the following facts are undisputed.[1]

---

[1] The defendant has filed a lengthy and detailed 114-paragraph statement of undisputed facts in support of its motion for summary judgment, and it has devoted 14 pages --- more than half --- of its memorandum of law to the factual background of this case. The plaintiff has likewise devoted much time and space to the facts. However, as will be shown *infra*, the legally dispositive issue is relatively simple and straightforward: was the plaintiff an "eligible employee" under the FMLA (*i.e.*, had she worked the statutory requisite number of hours), thereby allowing her to state a claim under that statute? Because the answer to this question is plainly no, I will discuss the background facts only to the limited extent that they are relevant and necessary to decide the motion for summary judgment.

The plaintiff, Jackie M. Moore, began her employment with the defendant, Sears Roebuck & Company, in October 1977, as a cashier in the Pensacola Sears Auto Center. She worked without problems or incident for many years, during which she rose to the position of Customer Service Advisor, a sales associate position. At all times pertinent, the plaintiff was an "FT40," meaning that she was a full-time/40 hour per week employee. The store general manager, Jim Byrnes, explained during deposition that an FT40 "is on the schedule 40 hours. Not 39, not 41, 40 hours every week of the year."

Beginning in 2000, the plaintiff took several substantial leaves of absence from Sears.[2] First, she took leave from July 2000 through August 2000, for a pinched nerve she sustained in an automobile accident. Then, she was on leave from November 2000 through January 2001, for fibroid tumors and a partial hysterectomy. And, from October 2003 through January 2004, she took a leave of absence so that she could undergo, and recuperate from, knee surgery.

The plaintiff was involved in a worker's compensation accident on July 16, 2004. She completed a report of the incident and sought medical treatment for her injuries the next day. She missed two days of work as a result of this accident, after which she returned to Sears with restrictions on the amount of weight that she could lift.

The plaintiff left work "with problems" on October 1, 2004. She was nauseated and vomiting and went to the emergency room, where it was discovered that she had a hernia. She had outpatient hernia surgery on October 11, 2004. She applied and was approved for short term disability through MetLife. She received a letter from MetLife indicating that her disability claim was authorized through November 8, 2004. The letter further indicated: "We anticipate that you will return

---

[2] The plaintiff does not now, nor did she then, seek FMLA protection for any of these absences.

to work on your first regularly scheduled workday after November 8, 2004." When her disability benefits expired, the plaintiff used her vacation and other available leave from November 8, 2004, through January 2005. According to Sears, this post-November 8th leave was not properly approved by management.

When the Sears general manager, Jim Byrnes, learned that the plaintiff was still on leave, he questioned how and why Sears "paid an associate from November 8th through January . . . that hadn't been approved by anyone," particularly since that time of year was designated a "blackout period" for vacation. In other words, Sears had a "hard rule" that associates could not take vacation during that period. Upon investigation, Mr. Byrnes was told by an HR representative, Amy King, that Sears made the mistake in allowing the plaintiff to remain on leave for months beyond her approved disability period. There was confusion on their end with the leave documentation and lack of follow-up. Mr. Byrnes explored the possibility of firing the plaintiff on this basis, but because it was Sears' mistake, he agreed to "let it go by" and proceed forward. The plaintiff admits that her leave was not approved by Mr. Byrnes, but she maintains that it was approved by Benji Adams, her direct supervisor.[3]

Before returning to work, the plaintiff met with management to discuss new scheduling changes and quality service performance standards that were implemented while she was out on leave. This meeting took place on February 7, 2005. Her past attendance problems were also discussed during this meeting, and she was told that Sears needed her to be reliable and dependable. She resumed work the next day, on February 8, 2005, and was restored to her old position. Later that same month, she took leave on two separate occasions so that she could travel to and attend two funerals for deaths in her husband's family.

---

[3] This disputed issue of fact is not material for summary judgment purposes. I will assume *arguendo* that her post-disability leave (from November 8th through January 2005) was approved by management.

In April 2005, the plaintiff began treatment with a new doctor for her worker's compensation injury. In May, and again in June 2005, this doctor advised that if her shoulder did not improve with conservative treatment, he would recommend arthroscopic surgery. The plaintiff discussed this possible surgery with her supervisor, Benji Adams, at some point in May 2005. This information was also conveyed to the caseworker handing the worker's compensation claim, who in turn passed the information along to Barbara Riley, the local HR lead. As discussed below in more detail, the plaintiff was on vacation between June 16th and June 21st, and did not report for work on June 23rd and June 24th. On June 27, 2005, in specific response to the information about the plaintiff's possible surgery, Ms. Riley unilaterally sent FMLA forms to the plaintiff as a matter of course. It appears to be undisputed that the plaintiff did not ask for this paperwork or otherwise request FMLA leave. Yet, she now claims that she was "planning to invoke" the FMLA for her possible surgery, and she claims that her May 2005 discussion with Mr. Adams put Sears on notice of her plans. She received the forms on June 28, 2005, but she did not have the opportunity to complete them. She was fired three days later, on July 1, 2005.

The parties, of course, disagree over the reason for the termination. The plaintiff claims that she was terminated because she planned to take FMLA leave and/or in retaliation for filing a worker's compensation claim. Sears contends that she was terminated for failing to call in or report for work on two consecutive days, June 23 and 24, 2005, after she had just returned from taking vacation leave from June 16th through June 21st. These two alleged "no calls, no shows" violated a company attendance policy that provides: "An associate who is absent from work for two consecutive days, without notifying Sears via the defined call-in process, will be subject to immediate termination."[4]

---

[4]
    For reasons to be discussed, I need not, and do not, reach the disputed issue

In May 2005, when the plaintiff told Mr. Adams that she might need surgery if her condition did not improve (*i.e.*, when she allegedly requested FMLA leave), she had worked 1,210.92 hours in the preceding year. When Ms. Riley sent her the FMLA forms on June 27th, she had worked 991.82 hours in the preceding year. And when she did subsequently undergo surgery --- on August 23, 2005 --- she would have worked a total of 1,056.96 hours in the preceding year; this latter calculation assumes that she would have worked forty hours per week between July 1, 2005 (the date of her termination) and August 23, 2005 (the date of her surgery and when she would have started FMLA leave).[5]

**B.     Claims and Arguments**

The plaintiff has filed a three-count complaint. She contends in count I that Sears interfered with and/or denied her substantive rights under the FMLA. She alleges in count II that Sears retaliated against her for requesting leave under the FMLA. And lastly, in count III, she alleges that she was retaliated against for exercising her rights under Florida worker's compensation law, in violation of Fla.

---

of why the plaintiff was terminated. Because she was not an eligible employee under the statute, her FMLA-based claims must necessarily fail in the first instance. Her separate claim arising under worker's compensation law will be addressed in Part III.C *infra*.

[5]     These several calculations were submitted by the defendant and based on the plaintiff's payroll records, attached as an exhibit to the summary judgment motion. Notably, in her response in opposition to the motion, the plaintiff did not dispute the accuracy or veracity of these calculations or the records upon which they were based. Instead, she argued only that the documents were uncorroborated hearsay and generated by a person of undisclosed name and title. In response to this argument, the defendant filed with the court a declaration by a Sears Senior Employment Paralegal, Catherine Miller, who has declared that she has knowledge of Sears employee pay and time records. She confirms that the exhibit represents the plaintiff's business records and that they are kept in the regular course of Sears' business activity. See Rule 803(6), Fed. R. Evid. I may, therefore, properly consider the records and calculations drawn therefrom, and they are regarded as undisputed.

Stat. § 440.205 (2005).

The defendant claims that at all times pertinent the plaintiff had not worked the requisite number of hours under the FMLA, and, consequently, she was not an "eligible employee" entitled to relief under the statute. Sears argues that the FMLA interference and retaliation claims should each be dismissed solely on this basis.[6] As for the worker's compensation claim, the defendant contends that the plaintiff cannot demonstrate retaliation under Fla. Stat. § 440.205 because there is no causal connection between the filing of her claim and her termination. Instead, Sears claims that it discharged the plaintiff for violating the "no calls, no show" attendance policy, and there is no evidence that this stated reason is a pretext for unlawful retaliation.

## II.   APPLICABLE LAW

### A.   Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265

---

[6] The defendant also argues that summary judgment should be granted on the FMLA retaliation claim because there is no causal connection between her attempt to exercise FMLA rights and her discharge. This argument will not be considered, however, as it was raised for the first time in the defendant's reply memorandum. See, e.g., Burger King Corp. v. H&H Restaurants, LLC, 2001 WL 1850888, at *7 n.2 (S.D. Fla. Nov. 30, 2001) ("A new ground for summary judgment raised for the first time in a reply memorandum . . . will not be considered.")

(1986); accord Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir. 1996).

However, summary judgment is inappropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact will be "material" if it might affect the outcome of the case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. See id.; see also Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On summary judgment, the record evidence and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the non-moving party. National Fire Ins. Co. of Hartford v. Fortune Const. Co., 320 F.3d 1260, 1267 (11th Cir. 2003); Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999).

While all the evidence must be viewed in a light most favorable to the non-movant, neither conclusory allegations nor unsubstantiated assertions will defeat an otherwise proper motion for summary judgment. See, e.g., Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Bennett v. Parker, 898 F.2d 1530, 1533-34 (11th Cir. 1990); Ramsey v. Leath, 706 F.2d 1166, 1170 (11th Cir. 1983); Kennedy v. Kelly Temporary Serv., Inc., 95 F. Supp. 2d 1288, 1294 n.5 (M.D. Ala. 2000) (collecting multiple cases); accord Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1429 (5th Cir. 1996) ("conclusory allegations, speculation, and unsubstantiated assertions are inadequate" to withstand summary judgment). Thus, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita, *supra*, 475 U.S. at 586. Employment discrimination cases are often fact-intensive, but "the summary judgment rule applies in job discrimination cases

just as in other cases." Chapman v. AI Transport, 229 F.3d 1012, 1026 (11th Cir. 2000); accord Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

### B. The FMLA

The FMLA entitles eligible employees to 12 work-weeks of unpaid leave during any 12-months period for any number of serious health conditions. 29 U.S.C. § 2612(a)(1)(A)-(D); Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721, 724, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003). "Not all employees are eligible to take such leave, so the issue of FMLA eligibility is a threshold question in FMLA suits." Morgan v. Neiman-Marcus Group, Inc., 2005 WL 3500314, at *4 (N.D. Tex. Dec. 20, 2005). For an employee to qualify for leave under the statute, she must meet the definition of an "eligible employee." See 29 U.S.C. § 2612(a)(1). The FMLA defines an "eligible employee" as an employee who has been employed for at least 12 months by the employer and for at least 1,250 "hours of service" with such employer during the previous 12-months period. Id. at § 2611(2)(A)(i)-(ii). The employee bears the burden of demonstrating that she satisfies this definition. See generally Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199 (11th Cir. 2001); see also Morgan, *supra*, 2005 WL 3500314 at *4 n.4 (collecting multiple cases). It is well-settled that "an employee who has less than 1,250 hours of service in the previous twelve-month period is not entitled to the protections of the FMLA and may not maintain an action under the Act." Caputo-Conyers v. Berkshire Realty Holdings, LP, 2005 WL 1862697, at *5 (M.D. Fla. Aug. 2, 2005) (collecting multiple cases); accord Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 796 (11th Cir. 2000) ("'The statutory text is perfectly clear and covers the issue. The right of family leave is conferred only on employees who have worked at least 1,250 hours in the previous 12 months.'") (*quoting* Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579, 582

(7th Cir. 2000)); Rich v. Delta Air Lines, Inc., 921 F. Supp. 767, 773 (N.D. Ga. 1996) ("the FMLA expressly and unequivocally provides that for an employee to be eligible for protection under the Act, she must have worked 1,250 hours for her employer in the previous twelve-month period"). Moreover, "the determination of whether an employee has been employed [the requisite number of hours] 'must be made as of the date leave commences.'" Walker v. Elmore County Bd. of Educ., 379 F.3d 1249, 1253 n.10 (11th Cir. 2004) (*quoting* 29 C.F.R. § 825.110(d)); accord Butler v. Owens-Brockway Plastics Prods., Inc., 199 F.3d 314, 316 (6th Cir. 1999) (1250 hours of service must be computed from date of commencement of leave, not from date of the adverse action). Under the FMLA, "hours of service" must be determined by the same principles used in the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 207. See 29 U.S.C. § 2611(2)(C); Rich, *supra*, 921 F. Supp. at 772. The FLSA provides that vacation, holiday pay, sick leave, and other pay for hours not actually worked do not count towards the 1,250 hours requirement. See 29 U.S.C. § 207(e)(2); see also Plumley v. Southern Container, Inc., 303 F.3d 364, 372 (1st Cir. 2002) ("[W]e hold that hours of service, as those words are used in the FMLA, include only those hours actually worked in the service and at the gain of the employer."); Robbins v. Bureau of Nat. Affairs, Inc., 896 F. Supp. 18, 21 (D.D.C. 1995) ("Under FLSA standards, an employee only gets credit toward the FMLA 'hours of service' requirement if the employee actually worked the hours in question."); accord Sherry v. Tam International, Inc., 2006 WL 1492248 (S.D. Tex. May 30, 2006) (time spent from work recuperating from a worker's compensation injury did not count towards 1,250 hours requirement).

The FMLA prohibits an employer from interfering with and/or retaliating against an employee who attempts to exercise an FMLA-created right. 29 U.S.C. § 2615(a). Thus, "the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee

asserts that his employer discriminated against him because he engaged in activity protected by the Act." Strickland, *supra*, 239 F.3d at 1206 (internal citations omitted). To state an FMLA interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Id. at 1206-07. To state a claim for retaliation, "an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Id. at 1207.

As indicated, the plaintiff has advanced claims for both FMLA interference and retaliation. Each will be discussed in turn.

### III.  DISCUSSION

####   A.  FMLA Interference (Count I)

This claim is easily disposed of. An interference claim presupposes that the complaining employee was "entitled to the benefit denied." See Strickland, *supra*, 239 F.3d at 1206-07; accord O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1353-54 (11th Cir. 2000); see also Martin v. Brevard County Public Schools, 2007 WL 496777, at *11 (M.D. Fla. Feb. 13, 2007) ("An interference claim has two simple factors: (1) was the employee entitled to a substantive right and (2) did the employer interfere with the employee's right."). It is undisputed in this case that at no time relevant did the plaintiff work 1,250 hours in the preceding year, see note 5 *supra*, and, therefore, she was not entitled to any substantive right under the FMLA. It is well-settled within and outside the Eleventh Circuit that an interference claim cannot be sustained if the employee was not eligible for leave under the FMLA in the first place. See, e.g., Kosakow v. New Rochelle Radiology Assoc., P.C., 274 F.3d 706, 724 (2d Cir. 2001) (noting that ineligible employees may not bring an interference claim because "the FMLA does not provide a private right of action for any employee, only for 'eligible employee[s]'"); Martin, *supra*, 2007 WL 496777, at *9 ("Before determining whether there has been a substantive violation, the Court must first determine whether Plaintiff is an eligible

employee pursuant to the statute. If Plaintiff is not an eligible employee then [his] claims fail and he does not have protection pursuant to the FMLA."); Carpenter v. Permanente, 2006 WL 2794787, at *12-14 (N.D. Ohio Sept. 27, 2006) (answering in the negative "the question of whether [plaintiff] can have a claim for FMLA interference if he was not eligible for FMLA leave in the first instance"); Potts v. Franklin Elec. Co., 2006 WL 2474964, at *2 (E.D. Okla. Aug. 24, 2006) (noting that in order to prevail on an FMLA interference claim, the employee must "demonstrate by a preponderance of the evidence entitlement of the right" under the statute); Kolarik v. Alterra Healthcare Corp., 2005 WL 1842752, at *3 (D. Kan. July 29, 2005) (rejecting interference claim "because the right to leave under the FMLA is only provided to 'eligible employees,' which Kolarik is not"); Pennant v. Convergys Corp., 368 F. Supp. 2d 1307, 1310-13 (S.D. Fla. 2005) (interference claim rejected because plaintiff only worked 1,123.60 hours in the preceding year); Morrison v. Amway Corp., 336 F. Supp. 2d 1193, 1196 (M.D. Fla. 2003) (explaining that only eligible employees may file interference claim under the FMLA); Walker v. Elmore County Bd. of Educ., 223 F. Supp. 2d 1255, 1257-58 (M.D. Ala. 2002) (summary judgment granted for defendant on interference claim because the plaintiff "was not an eligible employee and therefore she has no prescriptive claim"), aff'd 379 F.3d 1249 (11th Cir. 2004); Morehardt v. Spirit Airlines, Inc., 174 F. Supp. 2d 1272, 1278 (M.D. Fla. 2001) (interference claim "disposed of easily" because the employee, who had not worked the 1,250 hours, was not eligible under the FMLA).

     The plaintiff impliedly concedes that her FMLA interference claim must fail. She acknowledges that "only 'eligible' employees are entitled to FMLA leave," and she he makes no attempt to avoid summary judgment on this ground, except to argue that her payroll and time records are uncorroborated hearsay and should not be considered --- an argument discussed and rejected in note 5 *supra*. Because the plaintiff was not an eligible employee, *a fortiori*, she was not entitled to leave, and

thus her interference/denial claim must be dismissed.

### B.  FMLA Retaliation (Count II)

As noted, for the plaintiff to state a retaliation claim, she must show that Sears took an adverse job action against her for having exercised her rights under the FMLA. Broken down into the three elements of her *prima facie* case, that means she must prove that "(1) [she] engaged in a statutorily protected activity; (2) [she] suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." Strickland, *supra*, 239 F.3d at 1207.

The defendant argues that since the plaintiff was not an eligible employee, then her retaliation claim must fail as a matter of law. The implicit thrust of this argument is based on the following syllogism: because the plaintiff was not an eligible employee under the FMLA, then she was not engaging in protected activity by requesting leave under the statute, and, consequently, she cannot satisfy the first element of her *prima facie* case. There is considerable case law support for this argument.

In Walker, *supra*, 379 F.3d at 1249, the question before the Eleventh Circuit was whether a request for leave by an ineligible employee constitutes an attempt to exercise an FMLA right. The Court of Appeals found that the plaintiff's claim failed at the first step of the retaliation analysis because her request was not protected by the FMLA. Id. at 1252. Noting that the right to leave is provided only to eligible employees, Walker expressly held that "the statute does not protect an attempt to exercise a right that is not provided by the FMLA, i.e., the right to leave before one becomes eligible therefor." Id. at 1253. Numerous other courts have held similarly. See, e.g., Hegre v. Alberto-Culver USA, Inc., 485 F. Supp. 2d 1367 (S.D. Ga. 2007) ("Because Plaintiff was not an eligible employee, her FMLA claims fail as a matter of law, irrespective of her characterization of her claims as alleging 'interference' or 'retaliation'") (citing cases); Burnett v. Southwestern Bell Telephone, L.P., 471 F. Supp. 2d 1121, 1134 n.21 (D. Kan. 2007) (citing cases

and observing that "several courts have found that an employee cannot assert an FMLA retaliation claim if she was not eligible for FMLA leave at the time she made the request"); Carpenter, *supra*, 2006 WL 2794787, at *17 (collecting and discussing the "substantial case law supportive of the general argument that an employee who is 'ineligible' for FMLA leave does not engage in statutorily protected activity and, therefore, does not have a basis for asserting an FMLA retaliation claim"); Shafnisky v. Bell Atlantic, Inc., 2002 WL 31513551, at *9 (E.D. Pa. Nov. 5, 2002) ("A plaintiff who is an ineligible employee under the FMLA [because the plaintiff did not meet the 1,250 working hours requirement] would not be engaging in statutorily protected activity in pursuing leave under that statute."); Pennant, *supra*, 368 F. Supp. 2d at 1313 (noting that, under Walker, "an employee who is ineligible for FMLA leave [because the employee did not meet the 1,250 working hours requirement] does not have a valid cause of action for retaliation under the FMLA"); Coleman v. Prudential Relocation, 975 F. Supp. 234, 245 (W.D.N.Y. 1997) (FMLA retaliation claim rejected where the plaintiff was not an eligible employee at the time he engaged in protected activity; "by the terms of the statute, only an 'eligible employee' can engage in protected activity").

      The rationale underlying the foregoing rule of law is perhaps best explained by the Middle District of Florida in Morehardt, *supra*:

> Where, as here, the employee is not eligible for any benefits under the Act because she has not satisfied the threshold eligibility requirements of working the required number of hours, the rationale for concluding that a *prima facie* case [of retaliation] has not been made out is . . . compelling. To follow Plaintiff's theory of retaliation claims under the FMLA to its logical extreme would produce absurd results. If employees could bring retaliation claims under the FMLA without meeting the threshold eligibility requirements an employee could work a minimal number of hours, randomly take leave to suit his or her own purposes, and simply advise the employer that he was taking leave under the FMLA, even though he was not entitled to leave under the Act. If the

> employer eventually fired the employee for taking leave the employee could then simply file suit and allege that the firing was in retaliation for the employee exercising his or her rights under the FMLA. Plaintiff's view of a *prima facie* claim for retaliation under the FMLA would produce such a result.
>
> The Court, therefore, concludes that in order to state a *prima facie* claim for retaliation under the FMLA the plaintiff must establish that the conduct he has engaged in --- which is the precipitating cause for the retaliation or termination of employment --- be a protected activity, which means that the leave he has taken, or requests to take, must be leave that he is eligible for and is entitled to take under the Act. Where the employee takes leave, or requests to take leave, that he is not eligible for, as here, the employee cannot be deemed to have engaged in protected activity and, therefore, termination by the employer in such a circumstance cannot be grounds to support a retaliation claim under the FMLA.

174 F. Supp. 2d at 1281

The only case cited by the plaintiff is not inconsistent. In Walker, *supra*, 223 F. Supp. 2d at 1255, the district court cited to certain of the above cases and acknowledged that "a number of federal courts that have considered the issue have found that there can be no retaliation under the FMLA unless and until an employee becomes eligible under the FMLA." Id. at 1258. Despite this plethora of case law, the district court opined that there should be an exception "where the employee, *before* she becomes eligible for FMLA, is putting the employer on notice of her intent to take FMLA leave *after* she becomes eligible for FMLA coverage." Id. at 1260 (emphasis in original). The court believed that Walker was such an employee. In that situation, the district court felt that "logic requires that the FMLA be read to require that the employee be permitted to make a retaliation charge against the employer for an adverse-employment action." Id. On appeal, the Eleventh Circuit did not necessarily disagree with that legal conclusion. See generally 379 F.3d at 1249. The panel did not reach the issue, however, because close examination of

the facts revealed --- contrary to what the district court had found --- that "Walker would not have been eligible for leave even at the time her leave was to begin." Id. at 1253. The Court thus stated: "We leave for another day the question of whether the FMLA protects a pre-eligibility request for post-eligibility leave." Id.[7] But, the Eleventh Circuit made clear that "there can be no doubt that [a] request --- made by an ineligible employee for leave that would begin *when she would still have been ineligible* --- is not protected by the FMLA." Id. (emphasis added).

The situation presented in Walker is the exact same situation in this case. The plaintiff here purportedly made her request for FMLA leave in May 2005, at which time she had worked a total of 1,210.92 hours in the preceding year. She was terminated on July 1, 2005, after which she underwent surgery on August 23, 2005. Assuming a 40-hour work week from July 1st through August 23rd (which is appropriate since she was an FT40, meaning that she would have been scheduled exactly 40 hours per week), she would have worked 1,056.96 hours in the preceding year from the date that her leave was scheduled to begin. See Walker, *supra*, 379 F.3d at 1253 n.10 ("the determination of whether an employee has been employed [the requisite number of hours] 'must be made as of the date leave commences.'"). Therefore, because the plaintiff was an ineligible employee requesting leave that would begin when she would still have been ineligible, the

---

[7] I note that at least two district courts have since confronted the issue left open by the Eleventh Circuit. Those courts agreed with the district court in Walker and held that the FMLA "necessarily must protect from retaliation those currently non-eligible employees who give [proper] notice of leave to commence once they become eligible employees." Beffert v. Pennsylvania Dep't of Public Welfare, 2005 WL 906362, at *3 (E.D. Pa. Apr. 18, 2005); accord Potts, *supra*, 2006 WL 2474964, at *3 ("where the employee, before he or she becomes eligible for FMLA leave, is putting the employer on notice of his or her intent to take FMLA leave after they become eligible for FMLA coverage, logic requires that the FMLA be read to require that the employee be permitted to make a charge against the employer for an adverse-employment action.").

Eleventh Circuit decision in Walker directly forecloses her retaliation claim.

Although it is somewhat unclear, the plaintiff appears to claim that there are two interrelated reasons why Walker does not control and why summary judgment should not be granted. First, citing to 29 C.F.R. § 825.110(d), the plaintiff suggests that Sears was required to (but did not) inform her that she was ineligible for FMLA leave. This regulation provides, in relevant part:

> If an employee notifies the employer of the need for FMLA leave before the employee meets [the] eligibility criteria, the employer must either confirm the employee's eligibility based upon a projection that the employee will be eligible on the date leave would commence or must advise the employee when the eligibility requirement is met.
> 
> * * *
> 
> If the employer fails to advise the employee whether the employee is eligible . . . the employee will be deemed eligible.

But, as the plaintiff recognizes in a footnote in her own memorandum of law, the Eleventh Circuit has expressly held that, in promulgating 29 C.F.R. § 825.110(d), the Department of Labor exceeded its authority "by altering the basic coverage provisions that Congress has written into the law." See Brungart, *supra*, 231 F.3d at 797. This regulation is, therefore, "invalid insofar as it purports to extend the eligibility provisions of the FMLA to an otherwise ineligible employee who is not promptly notified after requesting leave that she is ineligible for it under the statute." Id.; accord id. at 796 (ineligible employee may not state a claim under the FMLA merely because employer failed to notify employee of her ineligibility; noting that "Congress could have, but did not, confer the right to family medical leave on any employee who did not receive a prompt response from the employer to her leave request"). Thus, contrary to her argument, it is of no legal consequence that the plaintiff was not "properly advised by Sears that she was ineligible" for FMLA leave.

Second, and concomitantly, the plaintiff argues that if she had been told that

she was ineligible for FMLA leave, then she would have worked overtime or postponed the date of her surgery until she was eligible for leave. In hindsight, that seems to be a possible way to achieve eligibility. But, this claim is not supported with citation to any evidence whatsoever; instead, it is based purely on conjecture and speculation. For example, the plaintiff has not filed or cited to any deposition testimony, affidavit, or other documentation to support the claim that she could have worked the hundreds of hours overtime that would have been necessary to meet the 1,250-hour requirement and/or that her treating physician would have agreed to postpone the shoulder surgery to a date uncertain. See, e.g., Leigh, *supra*, 212 F.3d at 1217 (the Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts" are insufficient to avoid summary judgment)

By arguing non-compliance with 29 C.F.R. § 825.110 --- and suggesting that she could have put off surgery or worked overtime if there had been compliance --- the plaintiff is perhaps trying to argue that Sears is equitably estopped from challenging her eligibility under the FMLA. In other words, because Sears did not tell her that she was ineligible, she was denied the opportunity to become eligible. See Brunghart, *supra*, 231 F.3d at 797 n.4 (noting that other courts have speculated about the availability of equitable estoppel in this context, but finding that the facts of the case then under review were insufficient to invoke the doctrine). I am reluctant to consider this possible estoppel argument, however, as it was not clearly and directly raised by the plaintiff. Cf. GJR Investments, Inc. v. County of  Escambia, 132 F.3d 1359, 1368-69 (11th Cir. 1998) (stating that courts may not "serve as *de facto* counsel for a party, [or] rewrite an otherwise deficient pleading in order to sustain an action"). Even if I were to consider estoppel to have been properly raised, the argument must fail on the merits. Several courts within the Eleventh Circuit have intimated or held, and I agree, that equitable estoppel will not lie in a situation such as the one presented here. See,

e.g., Martin, *supra*, 2007 WL 496777, at *10 ("Until the Eleventh Circuit mandates differently, this Court finds no reason to apply the estoppel doctrine to the FMLA."); Hegre v. Alberto-Culver USA, Inc., 2007 WL 1481896, at *1 n.1 (S.D. Ga. May 15, 2007) ("[I]t should be noted that it is doubtful that the doctrine of equitable estoppel may be applied in FMLA cases."); Pennant, *supra*, 368 F. Supp. 2d at 1313 ("There is no support from the Eleventh Circuit for applying the doctrine [of estoppel] in FMLA cases, [and] absent a directive from the Eleventh Circuit, this Court declines to apply the doctrine."); see also Caputo-Conyers, *supra*, 2005 WL 1862697, at *5-6 n.15-16 (noting that, absent guidance from the Eleventh Circuit, courts within this circuit have declined to apply equitable estoppel in FMLA cases; further noting that numerous courts "have rejected arguments that an employee's statutory ineligibility should not be fatal to an FMLA claim where the actions of the employer prevented the employee from meeting those requirements").[8]

For these reasons, the FMLA retaliation claim must be, and is, dismissed.

### C. State Worker's Compensation Retaliation (Count III)

The final cause of action arises under Fla. Stat. § 440.205, and is purely a

---

[8]

And furthermore, even if it could be argued that estoppel *should* apply to the FMLA, the doctrine would not be appropriate here. Equitable estoppel is a fairness doctrine that prevents one from denying the consequences of his conduct where that conduct induces another to change position in good faith upon the representations made. Here, the plaintiff was terminated on July 1, 2005. Obviously, she could not have worked overtime after her discharge, and it would have had no impact on her FMLA eligibility if she had postponed her surgery at that time. The plaintiff/employee in Plumley, *supra*, 303 F.3d at 364, tried to advance a similar claim. The First Circuit Court of Appeals stated that such an argument "twists [the] equitable estoppel doctrine into a shape that the law does not recognize." Id. at 374. This is because estoppel "clearly presupposes that the person invoking the doctrine had a choice of actions to take and, of his own volition, changed position based on the conduct of, or representations made by, the other party. Here, however, Plumley had no such options. He was discharged, and could not thereafter have engaged in hours of service accountable under the FMLA." Id. The same rationale and logic apply in this case.

state-law claim. "[A] Court may decline to exercise jurisdiction over state-law claims, where the Court has dismissed all the federal claims over which it has original jurisdiction." McCulloch v. PNC Bank, Inc., 298 F.3d 1217, 1227 (11th Cir. 2002) (*citing* 28 U.S.C. § 1367(c)(3)). The Eleventh Circuit has stated that "if the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of the state claims." L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984) (*citing* United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)); see also Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (recognizing that the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial").

Having disposed of the federal claims, I decline to exercise supplemental jurisdiction over the plaintiff's state-law claim for worker's compensation retaliation. Count III will thus be dismissed, without prejudice, to allow her to pursue that claim in state court, should she choose to do so.

## IV.  CONCLUSION

For these reasons, the defendant's motion for summary judgment (doc. 22) is hereby GRANTED as to Counts I and II of the Complaint (the FMLA claims). Count III of the Complaint is DISMISSED, without prejudice. The Clerk is directed to enter judgment in favor of the defendant, together with taxable costs.

DONE AND ORDERED this 2nd day of July, 2007.

*/s/Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**